**EXHIBIT A**



## LIFE SETTLEMENT SINGLE CASE COMMISSION AGREEMENT

This Life Settlement Single Case Commission Agreement ("Agreement") is made and entered into on this date of January 04, 2012 ("Effective Date") by and between:

*Opulen Ventures Inc d/b/a Opulen Capital*  
*1600 Rosecrans Avenue, Building 7, Suite 400*  
*Manhattan Beach, CA 90266*  
*(Also referred to as "OC")*

AND

*Axcessa LLC ("AX")*  
*1368 38th Street*  
*Brooklyn, NY 11218*  
*(Also referred to as "Purchaser" or "Buyer")*

This Agreement is regarding and related to the brokering of the sale of the following previously issued life insurance policy in the tertiary market (hereinafter referred to as "Settlement"):

| Landmark Consulting, LLC, Tennessee Commerce Bank and Lock Lord, LLP | American General | YM00332790 |
|---|---|---|
| Client Referred to AX ("Client") | Life Insurance Carrier | Life Insurance Policy No. ("Policy") |

In consideration of the mutual covenants contained herein, OC and Purchaser (collectively, the "Parties" and individually, a "Party") agree as follows:

1. Opulen Capital is referring "Client" to Axcessa and they acknowledge that they intend to enter into a Life Settlement agreement with Landmark Consulting, LLC, Tennessee Commerce Bank and Lock Lord LLP to purchase the "Policy" ensuring the life of Gary Wilder.

2. AX shall incur the required and related costs to facilitate Settlement of Policy and perform the duties necessary to facilitate Settlement of Policy including but not limited to:
   - Due diligence review, Policy/trust assessment
   - Obtaining and forwarding independent third party life expectancy reports.
   - Best execution negotiation to maximize fair market value of Settlement of Policy.
   - Medical underwriting & insurance verifications.
   - Submission to multiple authorized and/or registered purchasers of life insurance policies.
   - Closing services including contract review & assistance with contingency requirements of purchaser of Policy.

3. Parties acknowledge that the contingent life settlement broker commission related to the Settlement of Policy is $500,000.00 ("Commission") to be paid by the purchaser, Axcessa, LLC ("AX")

4. Parties further acknowledge the following:
   a) OC shall receive Commission from Axcessa, LLC or designated escrow account within 72 hours of change of ownership from the "client" to the purchaser's elected entity.
   b) Parties shall abide by "Applicable Law" defined as any and all applicable federal, state or other laws, rules, regulations to which the Parties are subject, including without limitation: (i) all applicable laws governing the business of life insurance and/or life settlements; (ii) any state or federal law, rule or regulation that governs, regulates or protects the receipt, use, maintenance, disclosure or redisclosure of Identifiable Data, including without limitation, HIPAA Act of 1996, as amended, and the Financial Services Modernization Act (Gramm-Leach-Bliley), as amended; and (iii) the rules, regulations and interpretations of any state insurance regulator or any other governmental, regulatory, self-regulatory or clearing organization in which the Parties are a member or to whose rules the Parties are subject to.
   c) Axcessa issues no guarantee that Settlement of Policy shall ultimately occur but if Settlement of Policy does occur, then the terms of this Agreement shall apply.
   d) OC is not responsible for any breach committed by Client or Axcessa.
   e) OC shall not pay or be otherwise responsible for any referral fees, commissions or other compensation due or claimed to be due by any party related to Settlement of Policy other than pursuant to this Agreement.
   f) In the event that Commission is prohibited by Applicable Law, is found to be excessive by Applicable Law or if the amount of Commission is lowered by any circumstance, the compensation terms of this Agreement shall be considered immediately amended, without further action by the Parties, to conform to Applicable Law by reducing Commission to the applicable Parties proportionately, payable to the maximum amount allowed under Applicable Law.

5. Parties recognize their status as independent contractors to each other. Neither this Agreement nor the relationship between the Parties constitutes a partnership, joint venture, agency, franchise relationship or any other business relationship of any kind whatsoever.

6. The **Buyer** agrees to indemnify and hold harmless OC from any loss, liability, obligation, penalty, fine, cost, or other damages whatsoever (including without limitation attorneys' fees) resulting directly from the failure to comply with Applicable Law, from any breach or violation of or inaccuracy in any of its representations, acknowledgements, duties or obligations pursuant to this Agreement, for all costs, fees, expenses directly incurred in connection therewith unless such claim, loss, liability, obligation, penalty, fine, cost, or other damages shall be found to have been attributable to fraud, willful misconduct or bad faith of OC.

7. This Agreement shall be solely governed by and construed as to the validity, enforcement, interpretation, construction, and effect and in all other aspects by the laws of the State of California.

In Witness Whereof, the Parties have caused this Agreement to be executed as of the Effective Date by their respective and duly authorized representative as indicated below.

_____
Chris Ledlie, Managing Partner & CEO, Opulen Capital ("OC")

_____
Clark Hogan, Managing Partner, Opulen Capital ("OC")

_____
Jack Wolcowitz COO, Axcess LLC